# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

––––––––––

m 99-30012

––––––––––

UNITED STATES ON BEHALF OF
CAL'S A/C AND ELECTRIC,

Plaintiff-Appellant,

VERSUS

THE FAMOUS CONSTRUCTION CORPORATION;
CAPITOL INDEMNITY CORPORATION,

Defendants-Appellees.

––––––––––––––

Appeal from the United States District Court
for the Eastern District of Louisiana

––––––––––––––

May 16, 2000

Before REAVLEY, SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Having won its Miller Act claim[1] against federal contractor The Famous Construction Corporation ("Famous") and its surety, Capitol Indemnity Corporation ("Capitol"), for amounts owing on unpaid construction and repair work, subcontractor Cal's A/C and Electric ("Cal's") appeals a partial summary judgment dismissing its Louisiana state law claim for attorney's fees.[2] Because the district court incorrectly concluded that the Miller Act precludes supplemental jurisdiction over Cal's' related state claim for fees, we vacate and remand, noting that, because the district court rendered its decision on November 30, 1998,

––––––––––––––

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] See 40 U.S.C. § 270a et seq. (imposing bonding requirements for federal contracts and establishing federal cause of action to recover on such bonds).

[2] See LA. REV. STAT. ANN. § 9:2784(C) ("If the contractor or subcontractor without reasonable cause fails to make any payment to his subcontractors and suppliers within fourteen consecutive days of the receipt of payment from the owner for improvements to an immovable, . . . the contractor or subcontractor shall be liable for reasonable attorney fees for the collection of the payments due the subcontractors and suppliers.").

it could not have taken into account this court's opinion announced the next day in *United States ex rel. Varco Pruden Bldgs. v. Reid & Gary Strickland Co.*, 161 F.3d 915, 918-19 (5th Cir. 1998).

## I.

Federal district courts can exercise supplemental jurisdiction "over all . . . claims that are so related to claims in the action within such original jurisdiction [of the district court] that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. The parties do not contest that Cal's' state law action for fees is sufficiently related, for § 1367 purposes, to its Miller Act claim. The district court read *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116 (1974), however, as construing the Miller Act to bar supplemental jurisdiction over otherwise related state law claims for attorney's fees.

*F.D. Rich* did no such thing; it stated that the Miller Act does not "explicitly provide for an award of attorneys' fees to a successful plaintiff." *Id.* at 126. The Court further held that "[t]he Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law." *Id.* at 127.

*F.D. Rich* thus announced only that Miller Act claims themselves do not *incorporate* state law remedies such as attorney's fees; it did not read the Act to preclude the pursuit of state causes of action for fees *in addition to* Miller Act claims.[3] As we announced in *Varco*

*Pruden,* "[w]e do not read *F.D. Rich* to prohibit an award of attorneys' fees under a state claim over which the court has exercised supplementary jurisdiction in a Miller Act case." 161 F.3d at 918-19.[4] We therefore vacate, concluding that Cal's may pursue attorney's fees under Louisiana law.

This result is not, however, mandated by the Prompt Payment Act Amendments of 1988.[5] The Prompt Payment Act, 31 U.S.C. § 3901 *et seq.*, confers additional rights and duties on federal contractors and subcontractors. The 1988 amendments additionally provide that

> this section [of the Prompt Payment Act] shall not limit or impair any contractual, administrative, or judicial remedies otherwise available to a contractor or a subcontractor in the event of a dispute involving late payment or nonpayment by a prime

---

(...continued)
state actions on the bonds of contractors for state and municipal public works projects . . . [though that statute was] inapplicable to construction projects of the United States. The Court of Appeals nonetheless held that since federal law controls Miller Act recoveries, it was free to look to 'state policy' rather than state law . . . ."). Here, by contrast, the plaintiff looks to Louisiana state law, and not the Miller Act, for relief.

[4] *See also United States ex rel. Garrett v. Midwest Constr. Co.*, 619 F.2d 349, 352-53 (5th Cir. 1980) ("Under [*F.D. Rich*], federal common law governs the claim for attorney's fees in Miller Act cases. . . . *F.D. Rich* proscribes attorney's fees in Miller Act cases absent a controlling contractual or statutory provision."); *but see United States ex rel. Howell Crane Serv. v. U.S. Fidelity & Guar. Co.*, 861 F.2d 110, 112 (5th Cir. 1988) (holding that no state law claim for attorney's fees should be inferred from pleadings because "[t]he clear holding of *F.D. Rich* is that attorney's fees are not generally available in a Miller Act suit even when state law provides for such an award.").

[5] *See* Pub. L. No. 100-496, 102 Stat. 2455, 2460-63, § 9 (codified at 31 U.S.C. § 3905).

---

[3] Indeed, the plaintiff in *F.D. Rich* did not even seek a state law-based claim for attorney fees, for California law did not provide such an action. Instead, the plaintiff sought to incorporate California *state policy* into the *federal Miller Act*. *See F.D. Rich*, 417 U.S. at 126-18 ("Looking to California law, the Court of Appeals found an award of attorneys' fees proper because [California law] allowed for the recovery of attorneys' fees in
(continued...)

contractor or deficient subcontract performance or nonperformance by a subcontractor.

31 U.S.C. § 3905(j). Cal's would have us recognize that § 3905(j) effectively overrules the construction of the Miller Act offered by *F.D. Rich,*[6] but the text plainly limits itself to one particular section of the Prompt Payment Act. Any bars to additional remedies erected by the Miller Act are left untouched by § 3905(j). We therefore do not rely on the Prompt Payment Act, but instead conclude that *F.D. Rich* found no such barrier in the Miller Act in allowing Cal's to proceed on its Louisiana claim.

Finally, because we follow the lead of *Varco Pruden* in holding that *F.D. Rich* did not preclude state-based actions for attorney's fees to accompany Miller Act claims, we need not entertain Cal's alternative argument that § 1367 implicitly overrules *F.D. Rich*. Because *F.D. Rich* did not bar supplemental jurisdiction over state law claims, there was nothing in that opinion for § 1367 to overrule.

## II.

Famous and Capitol argue that the district court should be affirmed, notwithstanding *Varco Pruden*, because Cal's' Louisiana claim fails on the merits. Louisiana law states:

If the contractor or subcontractor *without reasonable cause* fails to make any payment to his subcontractors and suppliers *within fourteen consecutive days of the receipt of payment from the owner* for improvements to an immovable, . . . the contractor or subcontractor shall be liable for reasonable attorney fees for the collection of the payments due the subcontractors and suppliers.

---

[6] A few district courts, in addition to the district court in this case, have supported this approach. *See United States ex rel. Don Siegel Constr. Co. v. Atul Constr. Co.,* 85 F. Supp. 2d 414, 416 n.1 (D.N.J. 2000) (stating that, though "at least one federal district court has held that a subcontractor's supplemental state law claims against a contractor or surety may be preempted by the Miller Act . . . the holding in that case was subsequently superseded by the Prompt Payment Act"). We are aware of no courts of appeals that have addressed the issue.

LA. REV. STAT. ANN. § 9:2784(C) (emphasis added).

Thus, Louisiana law allows Cal's to recover attorney's fees from Famous, the contractor, though not from Capitol, the surety.[7] Furthermore, as we have previously held, "recovery on the bond must be under the Miller Act." *Varco Pruden*, 161 F.3d at 919.[8] Cal's therefore may proceed against Famous but not Capitol.

Famous presents two arguments, under LA. REV. STAT. ANN. § 9:2784(C), why it should not be held liable for attorney's fees and asserts that remand is inappropriate because Cal's failed to comply with FED. R. APP. P. 10. We address each argument in turn.

### A.

*First*, Famous claims that it had "reasonable cause" to refuse to make payment and therefore cannot be made to pay fees under § 9:2784(C). Famous and Cal's disputed the amount owed. In fact, the district court granted less than what Cal's originally had requestedSSfurther evidence that the dispute was joined in good faith on the part of Famous.[9]

Moreover, Famous had paid the undisputed amounts in full; only the disputed amounts were kept from Cal's.[10] Therefore, according to Famous, Cal's cannot prove that Famous lacked reasonable cause not to make payment, as required to obtain attorney's fees under Louisiana law.

We may affirm on any ground supported by the record, even if it was not the basis for judgment.[11] Nevertheless, rejection on the merits of Cal's request for attorney's fees under § 9:2784(C) requires particular factual findings that the district court did not makeSSindeed, had no need to make.[12] Therefore, remand is necessary to determine whether Famous had reasonable cause not to pay Cal's.

### B.

*Second*, the statute allows recovery of attorney's fees only "[i]f the contractor or subcontractor . . . fails to make any payment to his subcontractors and suppliers *within fourteen consecutive days of the receipt of payment from the owner*." § 9:2784(C) (emphasis added). The VA made a series of

---

[7] *See Howell Crane*, 861 F.2d at 113 ("[Surety] USF&G's only involvement with [subcontractor] Howell was its Miller Act bond. No state law claim was asserted by Howell against USF&G. Thus, there is no basis for a pendant jurisdiction award of attorney's fees against USF&G.").

[8] *See also Bernard Lumber Co. v. Lanier-Gervais Corp.*, 560 So.2d 465, 467 (La. App. 1st Cir. 1990) ("While the Miller Act is not the exclusive remedy available to suppliers in some cases, it is the exclusive remedy available to a supplier against a surety (or the surety's guarantor in this case) on a Miller Act payment bond.").

[9] *See Contractors Supply & Eq-Orleans v. J. Caldarera & Co.*, 734 So. 2d 755, 759 (La. App. 5th Cir. 1999) ("The trial judge determined that the amount demanded by the plaintiff was out of proportion to the amount owed, therefore the defendant had reasonable cause to withhold (continued...)

(...continued)
payments. . . . [T]he trial court did not err in denying the plaintiff attorney fees . . . .").

[10] *Cf. Unis v. JTS Constructors/Managers, Inc.*, 541 So. 2d 278, 281 (La. App. 3d Cir. 1989) (reasoning that "because no disputes existed between the parties over the Palmetto Creek Project, it was unreasonable for JTS Constructors to withhold payment").

[11] *See Zuspann v. Brown*, 60 F.3d 1156, 1160 (5th Cir. 1995) ("We are free to uphold the district court's judgment on any basis that is supported by the record."); *Wooton v. Pumpkin Air, Inc.*, 869 F.2d 848, 850 n.1 (5th Cir. 1989) (stating that judgment "may be affirmed on appeal for reasons other than those asserted or relied on below").

[12] The intensely factual nature of this dispute is reflected in the briefs of both parties, and that remand for further proceedings is warranted is reflected in the paucity of record references by either side.

4

payments to Famous, including compensation for part of the work performed by Cal's. Cal's, however, also did work for Famous that the VA *never* paid for.

That is, the VA never paid for work ordered by Famous, despite Cal's repeated warnings that such work did not comply with Famous's contract with the VA and thus would not be eligible for federal reimbursement. Therefore, if, on remand, Famous does not establish reasonable cause for failing to pay Cal's, the district court is directed to award Cal's attorney's fees, but *only* those fees that were necessary to obtain payments for which Famous was previously compensated by the VA.[13]

Cal's claims that Famous should be estopped from asserting nonpayment by the VA as a defense, because Famous unreasonably failed to request additional payments from the VA to ensure full compensation for Cal's. But nothing in the text of § 9:2784(C) suggests any opportunity for relief where the contractor has not received payment from the owner, and Cal's does not provide any alternative theory under Louisiana law to justify recovery of attorney's fees.

## C.

Remand therefore is necessary, because the record does not permit us to render judgment on Cal's claim under § 9:2784(C). The district court erroneously dismissed this claim for lack of supplemental jurisdiction. Therefore, on remand it will have its first opportunity to address the claim on the merits.

---

[13] *See Gitz v. Quality Restorations Contractors, Inc.*, 508 So. 2d 170, 172 (La. App. 4th Cir. 1987) (Ciaccio, J., concurring) ("[Section 9:2784(C)] is a punitive statute that regulates the timely payment of the sub-contractor out of those funds the contractor receives as progress payments from the owner. It does not and cannot shift the risk of non-payment by the owner from the general contractor to the sub-contractor in the absence of specific language in the contract providing for that contingency.").

Famous and Capitol, however, blame any deficiencies in the record not on the procedural posture of this case, but on Cal's. They assert that record omissions should be construed against Cal's on the ground that Cal's failed to notify them that it ordered only an incomplete transcript, inadequate to support Famous and Capitol's merits defense.

It is the duty of the appellant either to "order from the reporter a transcript of such parts of the [district court] proceedings not already on file as the appellant considers necessary," or "file a certificate stating that no transcript will be ordered." FED. R. APP. P. 10(b)(1). Moreover, where the appellant decides to order something less than the entire transcript, it must "file a statement of the issues that the appellant intends to present on the appeal and must serve on the appellee a copy of both the order or certificate and the statement." FED. R. APP. P. 10(b)(3)(A). The appellee then has the opportunity to order other parts of the proceedings to be included in the record on appeal. FED. R. APP. P. 10(b)(3)(B)-(C).

Cal's satisfied *in toto* the requirements of rule 10(b)(3)(A). It served Famous and Capitol with its transcript order and with its notice of appeal, which adequately articulated a "statement of the issues that the appellant intends to present on the appeal." *Id.* The appellate rules do not require, as Famous and Capitol seem to suggest, that an appellant specifically warn appellees that it is not ordering a complete transcript. Famous and Capitol may regret failing to take the opportunity to order additional parts of the transcript for appealSSparticularly because *Varco Pruden* has forced them to press alternative legal theoriesSSbut the fault lies with Famous and Capitol, and not Cal's.

VACATED and REMANDED.

5